57 CCPA

**Application of Howard B. CUMMINGS and Ralph Gibson.**

**Patent Appeal No. 8124.**

United States Court of Customs and Patent Appeals.

Dec. 11, 1969.

———◆———

Henry L. Burkitt, New York City, atty. of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. J. F. Nakamura, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, GANEY, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals[1] affirming the rejection of claims 5, 8, 12–27, and 31–39 of application serial No. 150,724, entitled "Process for the Manufacture of Ceramic Articles, and Product Derived From Such Process." Twelve claims have been allowed.

The invention pertains to the manufacture of ceramic articles such as china, refractory bodies, wall tile, and sanitary ware. The well established method of manufacturing these articles begins with the mixing in water of a plurality of particulate materials, e. g., clay, talc, and aluminum oxide, to form a viscous slurry referred to in the art as a "slip." This slip is formed into a shape approximating that of the final article to be produced by "casting" the slip in a porous mold. After sufficient water has been absorbed by the walls of the mold to render the casting self-supporting, it is removed from the mold, allowed to dry further, and finally fired or sintered to fix the shape as that of the article desired.

Appellants have discovered that a number of beneficial results can be achieved if *all* the ingredients used to prepare the slip are first processed in a particular manner. Specifically, appellants' procedure involves the steps of (1) combining *all* the raw ingredients in a liquid such as water to form a viscous mixture, (2) extruding this mixture into a form resembling thick spaghetti or noodles, (3) drying and then heating the extrusions to a temperature approximating that at which cast ceramic articles having the same composition would normally be sintered, e. g., 2150° to 2900° F., and (4) after cooling, reducing the extrusions to a particle size suitable for preparing a viscous mixture used for casting.[2] Step 3, which appellants call a "reacting" step, drives off water of crystallization and carbonaceous and other oxidizable materials present in the raw ingredients and also effects certain chemical and physical changes which would otherwise not occur until the firing or sintering of the casting.

---

1. Bailey and Brewrink, Examiners-in-Chief, and Bendett, Acting Examiner-in-Chief, opinion by Brewrink.

2. Appellants refer to viscous mixtures of particles processed according to their invention as "ceramic suspensions" to distinguish them from other slips.

Some of the benefits which derive from the use of appellants' process are that warping, excessive shrinkage and other changes which otherwise occur in a casting during firing or sintering are avoided, and that products of improved strength and uniformity in structural and electrical properties are obtained.

There is one preferred embodiment of appellants' invention which also requires mention. Namely, appellants have found it desirable in step 4 to limit their reacted material to a particle size not greater than 44 microns and to limit the amount of particles finer than one micron to from 9.5% to 35% by weight. Appellants' specification indicates that by so limiting the particle sizes, products of particularly high densities and uniformity of chemical and physical properties are obtained and the clogging of porous molds by ultra-fine particles is avoided.

Each of the appealed claims is rejected under 35 U.S.C. § 103 as unpatentable over one or more of the following references:

| | | |
|---|---|---|
| Casselman | 1,692,887 | Nov. 27, 1928 |
| Bennett | 2,159,349 | May 23, 1939 |
| Bickford | 2,299,374 | Oct. 20, 1942 |
| Austin | 2,534,653 | Dec. 19, 1950 |

Casselman is relied on for a disclosure of the use of porous molds for casting ceramic articles while Austin is relied on for a disclosure of the use, for the same purpose, of non-absorbent molds having an absorbent internal core.

Bennett, the reference of principal importance here, discloses a method of preparing casting slips containing a flaky, magnesia-containing mineral such as talc or pyrophyllite. In one embodiment, the magnesia-containing material is calcined and ground so that it does not assume the undesirable flaky form and is then mixed in water with clay and other particulate materials to form a slip. More pertinent here is a second embodiment described in Bennett as follows (our emphasis):

Instead of simply calcining the magnesia-containing material, a reinforcing agent of even greater effectiveness may be produced by mixing finely ground talc with a matrix material, adding *but a very small percentage of a binder (for example, 5% of clay* or a small quantity of sodium alginate, gum tragacanth, goulac or lignon extract, etc.), extruding the mixture through an auger so as to compact the same and form bodies or masses, and then burning the bodies or masses to vitrifying or semi-vitrifying temperatures. The mass can be extruded in the form of a rod and then broken up into pieces of desired size before burning the same. As an illustration, a reinforcing agent can be made by intimately mixing 45% of sepiolite or talc with 50% of ground glass and 5% of clay. After intimately mixing and extruding the mass through a die, the extruded material is broken up into pieces ranging from 1 to 4 inches in diameter, and then burned to cone 02 or cone 03.[3] At this temperature the mass will be found to have been rendered substantially vitreous. These masses are then ground to a suitable state of division.

The scope of the expression "matrix material" is stated by Bennett as follows:

By the term "matrix material" as used herein, reference is made to prefused amorphous, relatively low melting point substances or frits such as window glass cullet, bottle glass, soda lime glass, or other previously fused and prepared frits, or highly alkaline natural materials such as sodalite, lepidolite, phonolite, nephelite, syenite, etc., volcanic glasses such as rhyolite and obsidian, colemanite, and other natural materials preferably containing a high proportion of alkalies.

---

3. The examiner has indicated that temperatures corresponding to cone 02 and cone 03 are 2098° and 2068° F., respectively. This has not been disputed by appellants.

In the manufacture of hotel china, Bennett suggests combining on a weight basis, 40% of the substantially vitrified, ground reinforcing agent described above, 30% of clay, 20% of ground glass or equivalent matrix material and 10% of raw talc or other magnesia-containing material. Bennett also suggests several other formulations, each of which calls for from 0 to 60% of a reinforcing agent and from 40 to 100% of other particulate materials.

Bickford relates to a method of casting non-plastic ceramic materials such as alumina and calcined substances such as burned clays. This method involves wet milling the non-plastic ceramic material until 95% of it is less than 44 microns in size, drying the resulting slip, repowdering the material, and mixing it with water to form a slip for casting in a porous mold. Bickford cautions against excessively long wet milling and indicates that an abundance of ultra fine particles can cause clogging of porous molds.

The board acknowledged that appellants have disclosed a patentable invention, saying:

> We * * * are convinced that appellants have presented a novel and useful contribution over the applied references. The reacting of all ingredients at a higher temperature than the final sintering appears to reasonably assure against unpredicted warping and changes in the article in the firing step. It further appears reasonable that the advantages would follow as to uniformity in the structural and electrical properties of the product. Within the Bennett patent, we do not find any suggestion of "reacting" all the ingredients that are to be used in molding an article and thus no appreciation or solution of appellants' argued and disclosed contribution to the production of stable and uniform articles. While Bickford is more expressive of treating all of the ingredients, within our understanding of this reference the "reacting" step is not approached with the intent of more than a drying, or at most calcining objective.

The board felt, however, that the appealed claims do not proscribe the inclusion of some "unreacted" ingredients in the final ceramic article. Being of that view and apparently of the view that Bennett's disclosure of the preparation of his "reinforcing agent" would make it obvious to react anything short of all the ingredients used in a ceramic article, the board held that the appealed claims do not distinguish over the references. Thus, although the rejection is based on § 103 obviousness, the ultimate issue here primarily involves only claim interpretation.

The appealed claims were treated below in three groups: (1) 5 and 8; (2) 12–27 and 39; and (3) 31–38. In reproducing representative claims from each group hereinafter, claim language which is at the heart of the interpretation issue is emphasized and paragraphing has been added to facilitate comprehension. Claim 5 is representative of the first group and reads as follows:

> 5. A process for manufacturing ceramic articles, which *includes the steps of*
>
> *preparing a viscous ceramic suspension* in a liquid carrier of ground ceramic materials *which have been mixed and then reacted through a temperature range to a maximum temperature* predetermined to complete certain physical and chemical changes in the mixed material, and then ground to a particle size within certain predetermined limits,
>
> forming a casting from *the* ceramic suspension between opposed mold faces one of which is pervious to and an absorbent for the carrier liquid and the other is impervious to and does not absorb the carrier liquid so that the ceramic particles deposit and build up substantially only on the pervious face,
>
> separating the casting from the mold, and

sintering the casting at a temperature substantially below the reaction temperature.

With respect to the claims in this group, the board said:

> Claims 5 and 8 do not appear to us to detail the ingredients in a manner excluding the materials added by Bennett to his "reacted" portion. We share the Examiner's view that where other unreacted parts can be used in the sintered article the references render obvious the recited steps.

We do not agree with the board's view that the language of claim 5 permits of the inclusion of "unreacted" materials in the final sintered article. Granting that there is no explicit negative limitation to this effect, the claim language, in our opinion, renders such a limitation implicit. It is clear that in the claimed process only *"the"* ceramic suspension is used to form *"the"* casting and equally clear that *"the"* ceramic suspension is prepared only from materials "which have been mixed and then reacted * * *." The rejection of claims 5 and 8 is accordingly reversed.

Claims 12 and 13 are representative of the claims of group (2) and read:

> 12. A process for manufacturing ceramic articles, *including the steps of*
>
> *producing a substantially uniform viscous mixture of a plurality of ceramic materials* including clay in a mixture liquid *in proportions determined by a particular end product to be produced,*
>
> dividing up *the* viscous mixture into relatively small portions to which are imparted any shape without any predetermined relation to the shape of any end product to be produced,
>
> reacting *the* shaped mixture by heating to a temperature of predetermined magnitude sufficient to carry to a desired end point effectuation of chemical and physical changes in the shaped mixture,
>
> disintegrating *the* reaction product into fine particles, and

> eliminating from *the* disintegrated particles all particles of a size outside certain predetermined limits.

> 13. A process for manufacturing ceramic articles, *including the steps of*
>
> *producing a substantially uniform viscous mixture of aluminum oxide, clay and talc* in a mixture liquid,
>
> dividing up *the* viscous mixture into relatively small portions to which are imparted any shape without any predetermined relation to the shape of any end product to be produced,
>
> reacting *the* shaped mixture by heating to a temperature of predetermined magnitude sufficient to carry to a desired end point effectuation of chemical and physical changes in the shaped mixture,
>
> disintegrating *the* reaction product into fine particles, and
>
> eliminating from *the* disintegrated particles all particles of a size outside certain predetermined limits.

With respect to these claims the board said:

> Claims 12 through 27 and 39 appear to us to be similarly open to rejection on the reference patents in that the "product" recited by claims such as claim 12 is not more clearly expressed than to be a definition of the "reacted" component of Bennett. We share the Examiner's views that the methods recited in these claims are not caused to be significantly distinguished over the applied references by reason of the stated ingredients and proportioning thereof.

If the phrase "in proportions determined by a particular end product to be produced" in claim 12 is disregarded, that claim would unquestionably read on Bennett's method of preparing a ceramic article using his clay-containing "reinforcing agent." Appellants urge, however, that this phrase should be so interpreted that the ingredients in the "plurality of ceramic materials including clay in a mixture liquid" will constitute a *complete* casting composition suitable for casting a ceramic article without

the addition of other ingredients. This it is said would distinguish the claim from Bennett who does not suggest reacting all the ingredients used to prepare a casting. While the meaning that appellants would have us give to the phrase in question may well have been what the claim drafter intended, there is no clear explanation of the meaning of this phrase in appellants' specification and we do not feel that such an interpretation is otherwise clearly enough required to justify a reversal of the rejection of claim 12. Claims 15–17 are identical to claim 12 except that each prescribes an upper limit or upper and lower limits on the sizes of particles to be retained after the elimination recited in the final step of the claims. However, in view of the teachings of Bickford mentioned above and the absence of evidence or convincing arguments to the contrary, we are of the opinion that limiting the size of the reacted particles in this manner does not alone render the process as a whole unobvious. Claim 39 is a product-by-process claim directed to the product of the process of claim 12. Our remarks with respect to the latter are equally applicable to the former. The rejection of claims 12, 15–17 and 39 is therefore affirmed.

Claim 13 and the claims of which it is representative (18, 20, 22, 24, and 26) differ from claim 12 in that two, three, or four specific ingredients reacted are recited. In claim 13, for example, the ingredients which are reacted together are "aluminum oxide, clay and talc." We have carefully reviewed the details of the Bennett disclosure and do not find that claim 13, or any other claim of which it is representative, reads on that disclosure or any subject matter rendered obvious thereby, notwithstanding that these claims are "open" to the extent that they do not preclude the use of some unreacted materials in the final ceramic article. We find nothing in Bennett or the other references that would suggest "reacting" the particular combinations of ingredients recited in these claims and thus disagree with the

board's view that Bennett would suggest reacting anything short of *all* the ingredients to be used in a ceramic article. The rejection of claims 13, 18, 20, 22, 24, and 26 is therefore reversed.

Claims 14, 19, 21, 23, 25, and 27 differ from those represented by claim 13 only in that percentages of the ingredients, in each instance totalling 100% are also specified. Our remarks with respect to the claims represented by claim 13 are equally applicable here. The rejection of claims 14, 19, 21, 23, 25, and 27 is therefore reversed.

Claim 31, which is representative of the third group of claims, reads:

31. A process for manufacturing ceramic articles, *including the steps of*

*producing a substantially uniform viscous mixture of 90% aluminum oxide, 4% clay and 6% talc in a mixture liquid,*

dividing up *the* viscous mixture into relatively small portions to which are imparted any shape without any predetermined relation to the shape of any end product to be produced,

reacting *the* shaped mixture by heating to a temperature of predetermined magnitude sufficient to carry to a desired end point effectuation of chemical and physical changes in the shaped mixture,

disintegrating *the* reaction product into fine particles,

processing *the* disintegrated particles to discard therefrom substantially all particles of a size greater than 44 microns and substantially all particles finer than one micron in excess of 15% to 20% of the total weight of the particles,

making a ceramic suspension of *the* remaining particles in a carrier liquid under controlled viscosity conditions,

forming a ceramic casting from *the* ceramic suspension within a mold walls of which are moisture absorbent, separating the casting from the mold, and

sintering *the* casting at a temperature substantially below the reaction temperature.

Although considerably narrower in that it contains recitations of ingredients, proportions thereof, and particle size distributions, claim 31 exactly parallels claim 5 considered above. Our remarks with respect to claim 5 are equally applicable to all the claims of group 3. We therefore reverse the rejection of claims 31–38.

In sum, the decision of the board is reversed as to claims 5, 8, 13, 14, 18–27, and 31–38 and is affirmed as to claims 12, 15–17, and 39.

Modified.